1 | **Louis J. Esbin, Esq. (Cal. Bar No. 119705)**
**LAW OFFICES OF LOUIS J. ESBIN**
2 | **27201 Tourney Road, Ste. 122**
**Valencia, California 91355**
3 | **Tel: 661-254-5050 | Fax: 661-254-5252**
**Email: Esbinlaw@sbcglobal.net**
4 |
Attorneys for Debtors, Russell L. Smith and Joy C. Smith

5 |

6 |

7 | **UNITED STATES BANKRUPTCY COURT**

8 | **CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION**

9 |

| | |
|---|---|
| In re | Chapter 13 Case |
| Russell L. Smith and Joy C. Smith, | Bankr. No. SV 08-17343 MT |
| Debtors. | NOTICE OF MOTION AND MOTION TO DETERMINE SECURED VALUE OF REAL PROPERTY; TO STAY POST PETITION PAYMENTS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION IN SUPPORT. |
| | Date:   January 13, 2009 |
| | Time:  11:00 am |
| | Place:  Courtroom 302 |
| | 21041 Burbank Blvd. Woodland Hills, CA |

19 |         TO THE HONORABLE MAUREEN TIGHE, UNITED STATES BANKRUPTCY JUDGE,

20 | CHAPTER 13 TRUSTEE, PARTIES IN INTEREST AND COUNSEL OF RECORD:

21 |         COMES NOW Russell L. Smith and Joy C. Smith, Chapter 13 Debtors ("DEBTORS"), and hereby

22 | move this Court pursuant to 11 U.S.C. §§506(a) and 1325(a)(5)(B) and *In re Lam (Lam vs. Investors*

23 | *Thrift)*, 211 B.R. 36 (9th Cir.BAP 1997), for a determination of the secured value of the Real Property

24 | located at 19413 Greenmountain Dr., Newhall, California 91321 (2842-005-044) (the "REAL

25 | PROPERTY") to be $370,000, based upon an appraisal as of October 8, 2008, and stay post petition

26 | payments by DEBTORS and to treat the claims of , as wholly unsecured for purposes of plan confirmation,

27 | on the grounds that the value of the REAL PROPERTY has declined in value since DEBTORS originally

28 | purchased the REAL PROPERTY in September 20, 2006, at the price of $570,000, upon which the

1  encumbrances with Countrywide Home Loans with Account No. 3899 ("C/W 3899") and Washington

2  Mutual Bank with Account No. 4727 ("WAMU 4727") are recorded as liens against the Real Property

3  with the Los Angeles County Recorder's Office, such that the value of the REAL PROPERTY no longer

4  has equity adequate to fully secure encumbrances, resulting WAMU 4727 being 100% undersecured and

5  not entitled to treatment under DEBTORS' proposed Chapter 13 Plan as a secured creditor for the full

6  amount of their purported claim, with its lien being subject to avoidance upon entry of a Chapter 13

7  Discharge; and on the further grounds set forth in the Memorandum of Points and Authorities, Declaration

8  in Support, filed concurrently herewith, and on such further grounds as may be presented in oral arguments

9  before this Court or upon Reply to any opposition filed in response to this Motion.

10       NOTICE IS FURTHER GIVEN that in accordance with the Local Rules of this Court, should any

11  party wish to oppose this Motion, they must do so by written opposition filed and served upon counsel for

12  Debtors not less than fourteen (14) days from the date of notice of this Motion, and failure to do so may

13  be deemed a waiver of any opposition which may have been made, resulting in entry of an order granting

14  the within Motion.

15       WHEREFORE, DEBTORS respectfully request the Court grant their Motion, and value the Real

16  Property at $370,000, deeming WAMU 4727 an undersecured creditor for the purpose of treatment under

17  DEBTOR'S proposed Chapter 13 Plan; that DEBTORS are relieved from making any post petition

18  payments to WAMU 4727; that the Chapter 13 Trustee will not advance to WAMU 4727, on account of

19  any proposed Chapter 13 Plan, any payment for the purposes of curing any amount in default or in arrears

20  to WAMU 4727; that WAMU 4727 have its lien subject to being avoided upon entry of a Chapter 13

21  Discharge, and for such other and further relief as the Court may deem just and proper.

22

23  Dated: December 15, 2008           LAW OFFICES OF LOUIS J. ESBIN

24

25                    BY_____
                      LOUIS J. ESBIN, ESQ.

26                      Attorneys for DEBTORS

27

28

MEMORANDUM OF POINTS AND AUTHORITIES

I.

INTRODUCTION

This Motion concerns the valuation of DEBTORS' residential Real Property located at 19413 Greenmountain Dr., Newhall, California 91321 (2842-005-044) (the "REAL PROPERTY") to be $$370,000, based upon an appraisal as of October 8, 2008, and stay post petition payments by DEBTORS and to treat the claims of , as wholly unsecured for purposes of plan confirmation, on the grounds that the value of the REAL PROPERTY has declined in value since DEBTORS originally purchased the REAL PROPERTY in September 20, 2006 at the price of $570,000, upon which the encumbrances with Countrywide Home Loans with Account No. 3899 ("C/W 3899") and Washington Mutual Bank with Account No. 4727 ("WAMU 4727") are recorded as liens against the Real Property with the Los Angeles County Recorder's Office.  See, Schedules A and D, attached and incorporated by reference as Exhibits "1" and "2," to DEBTOR'S Declaration filed concurrently herewith.

At this time, due to the general decline in real estate values in Southern California, which has substantially effected the area  in which the Real Property is located, the value of the Real Property has substantially declined in value, no longer entirely supporting the security interest of WAMU 4727.  In making this Motion, DEBTORS rely upon the appraiser's opinion that is attached and incorporated by reference as Exhibit "3," to the Declaration filed concurrently herewith.  Further, as set forth in DEBTOR'S Declaration filed concurrently herewith, DEBTORS rely on  their understanding as homeowners that the value of the Real Property, as set forth in their Schedules A and D, is comparable to other home values in their area, as of the commencement of this case, which value DEBTORS reasonably believe may continue to decline as of the confirmation of their Chapter 13 Plan. DEBTORS, therefore, believe a valuation of $$370,000 is fair and reasonable pursuant to 11 U.S.C. §§506(a) and 1325(a)(5)(B); Zimmer v. PSB Lending, 313 F.3d 1220 (9th Cir. 2002), wherein the Ninth Circuit affirmed the allowance of lien stripping in the course of a Chapter 13;  In re Lam (Lam vs. Investors Thrift), 211 B.R. 36 (9th Cir.BAP 1997); and In re Crain, 243 B.R. 75 (Bankr.CD 1999), for the purpose of valuation of the Real Property and classification of WAMU 4727 as a Class Five general unsecured creditor in

1

1  DEBTOR'S Chapter 13 Plan.

2                                    II.

3                          FACTUAL BACKGROUND

4          On September 25, 2008, DEBTORS filed a voluntary petition under Chapter 13, Title 11 United

5  States Code commencing Case No. SV 08-17343 MT (the "CASE"), reasonably believing such was needed

6  to stay the foreclosure of their residential Real Property and to enable DEBTORS to reorganize their

7  financial affairs, including concerning the Real Property.  The Real Property is DEBTORS' principal

8  residence.  As set forth on DEBTORS' Schedule I and J, DEBTORS' income is adequate to make the

9  payments due C/W 3899, but not those due WAMU 4727, and adequate to cure the existing amount in

10  default owing to C/W 3899, but not those due and owing WAMU 4727.  See, DEBTOR'S Declaration

11  filed concurrently herewith.

12          DEBTORS originally purchased the REAL PROPERTY in September 20, 2006 at the price of

13  $$570,000, upon which the encumbrances with C/W 3899 and WAMU 4727 are recorded as liens against

14  the Real Property with the Los Angeles County Recorder's Office, such that the value of the REAL

15  PROPERTY no longer has equity adequate to fully secure encumbrances, resulting in WAMU 4727 being

16  100% undersecured, not entitled to treatment under DEBTORS' proposed Chapter 13 Plan as a secured

17  creditor for the full amount of their purported claim, and whose lien should be avoided upon entry of a

18  Chapter 13 Discharge.  See, DEBTOR'S Declaration filed concurrently herewith.

19                                   III.

20                               ARGUMENT

21                                    A

22      The Real Property Must be Valued for Purposes of the Chapter 13 Plan Confirmation.

23      Bankruptcy Code section 506(a) provides in pertinent part that:

24      "An allowed claim of a creditor secured by a lien on property in which the estate has

25          an interest ... is a secured claim to the extent of the value of such creditor's interest in

26          the estate's interest in such property, ... and is an unsecured claim to the extent that the

27          value of such creditor's interest ... is less than the amount of such allowed claim.  *Such*

28

1      *value shall be determined in light of the purpose of the valuation and of the proposed*

2      *disposition or use of such property, and in conjunction with any hearing on such*

3      *disposition or use or on a plan affecting such creditor's interest.*[emphasis added]."

4         In the case of In re Taffi, 144 B.R. 105, 109 (Bankr.C.D.Cal.1992), the Honorable Vincent P.

5 Zurzolo, Bankruptcy Judge, considered the factors relevant to a determination of a motion to determine

6 the secured portion of a claim.  In that decision, Judge Zurzolo reasoned that "[i]t would appear from the

7 above quoted language that the value of a lien creditor's interest in collateral that is property of a

8 bankruptcy estate must be determined after considering two factors: (1) the purpose of the valuation and

9 (2) the proposed disposition or use of the property."  The Bankruptcy Appellate Panel in the case of In re

10 Lam, 211 B.R. 36 (9th Cir. 1997), considered the exact facts set forth in this CASE and, held the

11 undersecured creditor would be stripped of its lien and treated as an unsecured creditor in the course of

12 the debtors' Chapter 13 plan.  The Court required a finding that the undersecured creditor must be *wholly*

13 *undersecured*, with not even a one dollar amount of secured value.  Judge Zurzolo revisited his reasoning

14 in Taffi in the case of In re Crain, 243 B.R. 75 (Bankr.CD 1999), in which it was held that valuation of

15 the real property collateral will be made as of the date of confirmation, and not as of the commencement

16 date.  In the case of Zimmer v. PSB Lending, 313 F.3d 1220 (9th Cir. 2002), the Ninth Circuit took up the

17 Lam issue, and held that ". . . more simply, a claim such as a mortgage is not a "secured claim" to the

18 extent that it exceeds the value of the property that secures it. Under the Bankruptcy Code, "secured claim"

19 is thus a term of art; not every claim that is secured by a lien on property will be considered a "secured

20 claim." Id. at 1223.

21         At this time, due to the general decline in real estate values in Southern California, which has

22 substantially effected the area  in which the Real Property is located, the value of the Real Property has

23 substantially declined in value, no longer entirely supporting the security interest of WAMU 4727.  In

24 making this Motion, DEBTORS rely upon the appraiser's opinion that is attached and incorporated by

25 reference as Exhibit "3," to the Declaration filed concurrently herewith.  Further, as set forth in

26 DEBTOR'S Declaration filed concurrently herewith, DEBTORS rely on their understanding as

27 homeowners that the value of the Real Property, as set forth in their Schedules A and D, is comparable

28

1    to other home values in their area, as of the commencement of this case, which value DEBTORS

2    reasonably believe may continue to decline as of the confirmation of their Chapter 13 Plan.  DEBTORS,

3    therefore, believe a valuation of $$370,000 is fair and reasonable for the purpose of valuation of the Real

4    Property and classification of WAMU 4727 as a Class Five general unsecured creditor in DEBTOR'S

5    Chapter 13 Plan.

6                                                                    B.

7    The Valuation of the Real Property Is Necessary for an Effective Reorganization and Debtors Should

8                                   Not Be Required to Make Post Petition Payments.

9            As provided in Section 506(a), valuation of the secured interest should take place "... in

10   conjunction with any hearing ... on a plan affecting such creditor's interest."  This Motion is made in

11   conjunction with DEBTORS' Chapter 13 Plan.  Debtors have demonstrated under Section 506(a) that the

12   Real Property is valued less than the security interest of WAMU 4727, and that a reorganization is in

13   prospect.  Accordingly, WAMU 4727 is not entitled to post petition payments.  See, United Savings

14   Association of Texas v. Timbers of Inwood Forest Association, Limited, 484 U.S. 365, 108 S.Ct. 626, 98

15   L.Ed.2d 740 (1988).

16                                                                  IV.

17                                                          CONCLUSION

18           DEBTORS respectfully request the Court grant their Motion, and value the Real Property at

19   $$370,000, deeming WAMU 4727 an undersecured creditor for the purpose of treatment under

20   DEBTOR'S proposed Chapter 13 Plan and that DEBTORS are relieved from making any post petition

21   payments to WAMU 4727, and that the Chapter 13 Trustee will not advance to WAMU 4727, on account

22   of any proposed Chapter 13 Plan, any payment for the purposes of curing any amount in default or in

23   arrears to WAMU 4727, and for such other and further relief as the Court may deem just and proper.

24   Dated: December 15, 2008                              LAW OFFICES OF LOUIS J. ESBIN

25

26                                                         BY _____
                                                           LOUIS J. ESBIN, ESQ.
                                                           Attorneys for DEBTORS

27

28

## SUPPORTING DECLARATION OF RUSSELL L. SMITH

I, Russell L. Smith, declare and state as follows:

1.        I am one of the DEBTORS who on September 25, 2008, filed a voluntary petition under Chapter 13, Title 11 United States Code commencing Case No. SV 08-17343 MT (the "CASE").

2.        At the time the Case was filed, it was done so, reasonably believing such was needed to stay the foreclosure of our residential Real Property and to enable us to reorganize our financial affairs, including concerning the Real Property.

3.        The    Real Property located at 19413 Greenmountain Dr., Newhall, California 91321 (2842-005-044) (the "REAL PROPERTY") to be $$370,000, based upon an appraisal as of October 8, 2008, and stay post petition payments by DEBTORS and to treat the claims of , as wholly unsecured for purposes of plan confirmation, on the grounds that the value of the REAL PROPERTY has declined in value since we originally purchased the REAL PROPERTY in September 20, 2006 at the price of $$570,000, upon which the encumbrances with Countrywide Home Loans with Account No. 3899("C/W 3899") and Washington Mutual Bank with Account No. 4727("WAMU 4727") are recorded as liens against the Real Property with the Los Angeles County Recorder's Office.  See, Schedules A and D, attached and incorporated by reference as Exhibits "1" and "2."

4.        As set forth on our Schedule I and J, our income is adequate to make the payments due C/W 3899, but not those due WAMU 4727, and adequate to cure the existing amount in default owing to C/W 3899, but not those due and owing WAMU 4727.

5.        At this time, due to the general decline in real estate values in Southern California, which has substantially effected the area  in which the Real Property is located, the value of the Real Property has substantially declined in value, no longer entirely supporting the security interest of WAMU 4727.

6.        In making this Motion, we rely upon the appraiser's opinion that is attached and incorporated by reference as Exhibit "3," to the Declaration filed concurrently herewith.  Further, we rely on our understanding as homeowners that the value of the Real Property, as set forth in our Schedules A and D, is comparable to other home values in our area, as of the commencement of this case.  We reasonably believe values may continue to decline and will be lower as of the confirmation of their Chapter 13 Plan.

7.      We, therefore, believe a valuation of $370,000 is fair and reasonable for the purpose of valuation of the Real Property and classification of WAMU 4727 as a Class Five general unsecured creditor in DEBTOR'S Chapter 13 Plan.

8.      Based upon a valuation of the Real Property of $370,000, along with the contribution of our post petition income from earnings, we will be able to fund our Chapter 13 plan.  See, Schedules I and J, attached as Exhibits "4" and "5," and incorporated by this reference.

9.      In the course of this Chapter 13 case, and in preparation for this Motion, I spoke with local Realtors, researched the local listings of pending sales and closed sales and, as a homeowner, determined the fair market value of the Real Property to be approximately $$370,000, consistent with the appraised value that is attached Exhibit "3," to the Declaration filed concurrently herewith.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

1    I declare under penalty of perjury, under the laws of these United States of America and

2  California, that the foregoing is true and correct, such that if called to testify, I could and would testify

3  thereto.

4    Executed this December 15, 2008, in Valencia, California

5

6

7    BY

8    /s/ Russell L. Smith

9    Russell L. Smith, Declarant

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "1"**

B6A (Official Form 6A) (12/07)

IN RE **Smith, Russell L & Smith, Joy C**                                    Case No. **SV 08-17343 MT**
_____                    _____
                    Debtor(s)                                                      (If known)

# SCHEDULE A - REAL PROPERTY

   Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

   **Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

   If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

   If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| **19413 Green Mountain Drive, Santa Clarita, CA 91321 (APN 2842-005-044) - appraised post petition as of October 13, 2008** | **Fee Simple** | **C** | **370,000.00** | **806,064.70** |
| | | **TOTAL** | **370,000.00** | |

(Report also on Summary of Schedules)

© 1993-2008 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

**EXHIBIT "2"**

B6D (Official Form 6D) (12/07)

IN RE **Smith, Russell L & Smith, Joy C**                                                          Case No. **SV 08-17343 MT**
                                    Debtor(s)                                                                    (If known)

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is the creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H – Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim Without Deducting Value of Collateral" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion, if Any" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND ACCOUNT NUMBER. *(See Instructions Above.)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO. **3899** <br><br> **Countrywide Home Loan** <br> **P.O. Box 10219** <br> **Van Nuys, CA  91410-0219** | | C | **Residence - Purchase Money 09/26/2006 - First Deed of Trust - 19413 Green Mountain Drive, Santa Clarita, CA 91321** <br><br><br> VALUE $ **370,000.00** | | | | 547,782.00 | 186,064.70 |
| ACCOUNT NO. **1929** <br><br> **Ford Credit** <br> **National Bankruptcy Service Center** <br> **P.O. Box 537901** <br> **Livonia, MI  48153-7901** | | C | **Partial Purchase Money - Used 2005 Ford Explorer - July 23, 2006 - Partial finance of prior leased balance $5,173.06** <br><br> VALUE $ **12,000.00** | | | | 13,775.14 | 1,775.14 |
| ACCOUNT NO. **7000** <br><br> **Los Angeles County Tax Collector** <br> **P O Box 54088** <br> **Los Angeles, CA  90054-0088** | | C | **Property Taxes to June 30, 2008** <br><br><br> VALUE $ **370,000.00** | | | | 8,282.70 | |
| ACCOUNT NO. **4727** <br><br> **Washington Mutual** <br> **P.O. Box 78065** <br> **Phoenix, AZ  85062-8065** | | C | **Residence - Second Deed of Trust - 09/2007 - 19413 Green Mountain Drive, Newhall, CA 91321-2143** <br><br> VALUE $ **370,000.00** | | | | 250,000.00 | 250,000.00 |

_____ **0** continuation sheets attached

Subtotal
(Total of this page)    $ 819,839.84    $ 437,839.84

Total
(Use only on last page)    $ 819,839.84    $ 437,839.84

(Report also on Summary of Schedules.)    (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

© 1993-2008 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

**EXHIBIT "3"**

File 205bc010   Page #2



## LOCATED AT:

19528 GREEN MOUNTAIN DRIVE
LOT: 19, TRACT: 30396
SANTA CLARITA, CA  91321

## FOR:

195288 BRIDGEPORT FUNDING
23757 VALENCIA BLVD.
SANTA CLARITA, CA  91355

## AS OF:

10/13/08

## BY:

STEVE HOBBS, SRA, SRPA

# Uniform Residential Appraisal Report

**File # 08-1010**

## SUBJECT

| | |
|---|---|
| Property Address 19413 GREEN MOUNTAIN DRIVE | City SANTA CLARITA State CA Zip Code 91321 |
| Borrower BURNS | Owner of Public Record BURNS | County LOS ANGELES |

Legal Description  LOT: 19, TRACT: 30396

| Assessor's Parcel # 2842-005-44 | Tax Year 2008-09 | R.E. Taxes $ |
| Neighborhood Name N/A | Map Reference 4551-F6 | Census Tract 9200.039 |

Occupant ☒ Owner ☐ Tenant ☐ Vacant   Special Assessments $ 0.00   ☐ PUD   HOA $ N/A ☐ per year ☐ per month
Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)
Assignment Type ☒ Purchase Transaction ☐ Refinance Transaction ☐ Other (describe)
Lender/Client  N/A   Address
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No
Report data source(s) used, offering price(s), and date(s).   MLS/DATA QUICK

## CONTRACT

I ☒ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.   N/A. THIS NOT A SALE TRANSACTION. THIS IS AN UPDATED APPRAISAL FOR THE OWNERS, INTERNAL MANAGEMENT CONSIDERATIONS.
Contract Price $ APPRAISAL   Date of Contract N/A   Is the property seller the owner of public record? ☐ Yes ☐ No   Data Source(s)
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☒ No
If Yes, report the total dollar amount and describe the items to be paid.   N/A

## NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location | ☐ Urban ☒ Suburban ☐ Rural | | Property Values | ☐ Increasing ☒ Stable ☐ Declining | | PRICE | AGE | One-Unit | 80 % |
| Built-Up | ☒ Over 75% ☐ 25-75% ☐ Under 25% | | Demand/Supply | ☐ Shortage ☒ In Balance ☐ Over Supply | | $ (000) | (yrs) | 2-4 Unit | % |
| Growth | ☐ Rapid ☒ Stable ☐ Slow | | Marketing Time | ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | 380 Low | 25 | Multi-Family | % |
| Neighborhood Boundaries THE SUBJECT IS LOCATED EAST OF THE ANTELOPE VALLEY FREEWAY | | | | | | 505 High | 36 | Commercial | % |
| AND SOUTH OF VIA PRINCESSA. | | | | | | 440 Pred. | 33 | Other | 20 % |

Neighborhood Description   THE SUBJECT IS LOCATED IN SANTA CLARITA, IN AN AREA KNOWN AS NEWHALL. CONSISTING OF NEWER HOUSES ON TRACT SIZE SITES AND OLDER HOMES, BUILT IN THE MID 1960'S ON TRACT SITES. NO VACANT PARCELS ARE LOCATED THROUGHOUT THE AREA.  THE SUBJECT IS CONVENIENT TO ALL LOCAL AMENITIES.
Market Conditions (including support for the above conclusions)   CONVENTIONAL,VA AND FHA FINANCING ARE PREVALENT WITH LOAN DISCOUNTS. BUY DOWNS AND CONCESSIONS TYPICAL OF THE MARKET.VALUES HAVE BEEN INCREASING FOR THE PAST 48 MONTHS.

## SITE

| Dimensions IRREGULAR | Area 7,840 SQ.FT. | Shape IRREGULAR | View NONE |
|---|---|---|---|

Specific Zoning Classification LCR190   Zoning Description SINGLE FAMILY RESIDENCES MAY BE BUILT ON IT
Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)
Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No  If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ | Water | ☒ | ☐ | Street ASPHALT | ☒ | ☐ |
| Gas | ☒ | ☐ | Sanitary Sewer | ☒ | ☐ | Alley NONE | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone C   FEMA Map # 065043-0480B   FEMA Map Date 12/2/80
Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No  If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No  If Yes, describe
THE SUBJECT IS LOCATED ON A TYPICAL CUT AND FILLED, CORNER, TRACT SITE FOR THE AREA . THE SUBJECT FACES A MINOR "COLLECTOR" TRAFFIC STREET FOR THE NEIGHBORHOOD WITH AN ADVERSE TRAFFIC EFFECT.  SUBJECT TO THE EASEMENTS AND RESTRICTIONS OF RECORD.

## IMPROVEMENTS

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☒ Concrete Slab ☐ Crawl Space | | Foundation Walls | CONCRETE/AVG | Floors | CARPET/TILE/AVG |
| # of Stories | 2 | ☐ Full Basement ☐ Partial Basement | | Exterior Walls | STUCCO/WMTL/AVG | Walls | DRYWALL/AVG |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | | Basement Area 0 sq.ft. | | Roof Surface | COMP/AVG | Trim/Finish | GOOD/AVG |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Basement Finish N/A % | | Gutters & Downspouts | YES/AVG | Bath Floor | C-TILE/AVG |
| Design (Style) CONVENT. | | ☐ Outside Entry/Exit ☐ Sump Pump | | Window Type | ALUM.SLID.AVG | Bath Wainscot | CERAMIC TILE/VIN |
| Year Built 1967 | | Evidence of ☐ Infestation NONE NTD | | Storm Sash/Insulated | NO/YES/AVG | Car Storage | ☐ None |
| Effective Age (Yrs) 35 | | ☐ Dampness ☐ Settlement | | Screens | YES/AVG | ☐ Driveway | # of Cars |

| Attic | ☐ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | Amenities | ☐ Woodstove(s) # | Driveway Surface CONCRETE |
|---|---|---|---|---|---|
| ☐ Drop Stair | ☐ Stairs | ☐ Other Fuel GAS | ☒ Fireplace(s) # 1 ☐ Fence | ☒ Garage # of Cars GARAGE-2 |
| ☐ Floor | ☐ Scuttle | Cooling ☒ Central Air Conditioning | ☐ Patio/Deck ☐ Porch | ☐ Carport # of Cars |
| ☐ Finished | ☐ Heated | ☐ Individual ☐ Other | ☒ Pool ☐ Other | ☒ Att. ☐ Det. ☐ Built-in |

Appliances ☐ Refrigerator ☒ Range/Oven ☐ Dishwasher ☐ Disposal ☐ Microwave ☐ Washer/Dryer ☐ Other (describe)
Finished area **above** grade contains:  7 Rooms   4 Bedrooms   3 Bath(s)   1,842 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.).

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).   THE POOL CEMENT IS PEELING AWAY. THE CONCRETE AROUND THE POOL IS UNEVEN. TREE ROOTS ARE CAUSING THE CEMENT TO CRACK. THE BATH FAN IS BROKEN. THE BATH FAN IS BROKEN.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No  If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No  If No, describe

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

File 08-1010    Page #4

# Uniform Residential Appraisal Report
File # 08-1010

| There are | 5 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 329,000 | to $ 505,000 | . |

| There are | 5 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 378,000 | to $ 529,900 | . |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 19413 GREEN MOUNTAIN DRIVE | 26126 FRIENDLY VALLEY | | 19423 GREEN MOUNTAIN DR. | | 26340 TORREYPINES DRIVE | |
| | SANTA CLARITA, CA 91321 | APN: 2842-018-023 | | APN: 2842-005-048 | | APN: 2842-010-033 | |
| Proximity to Subject | | 0.15 miles | | 0.01 miles | | 0.58 miles | |
| Sale Price | $ APPRAISAL | $ | 385,000 | $ | 420,000 | $ | 380,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 193.18 sq.ft. | | $ 202.70 sq.ft. | | $ 206.07 sq.ft. | |
| Data Source(s) | | ZILLOW | | ZILLOW | | ZILLOW | |
| Verification Source(s) | | TITLE COMPANY | | TITLE COMPANY | | TITLE COMPANY | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | Conventional | | Conventional | | Conventional | |
| Date of Sale/Time | | 9/29/08 | | 5/30/08 | -25,000 | 9/2/08 | |
| Location | MIN.TRAFFIC | MIN.TRAFFIC | | MIN.TRAFFIC | | AVERAGE | -10,000 |
| Leasehold/Fee Simple | Fee Simple | FEE | | FEE | | FEE | |
| Site | 7,840 SQ.FT. | 9,750 SF | | 7,840 SF | | 7,897 SF | |
| View | NONE | FAIR | -10,000 | NONE | | NONE | |
| Design (Style) | CONVENT. | CONVENT. | | CONVENT. | | CONVENT. | |
| Quality of Construction | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Actual Age | 1968 | 1966 | | 1967 | | 1968 | |
| Condition | AVERAGE | GOOD | -10,000 | VERY GOOD | -20,000 | AVERAGE | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | -5,000 | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 7 4 3 | 7 3 4 | +5,000 | 7 4 3 | | 7 4 3 | |
| Gross Living Area | 1,842 sq.ft. | 1,993 sq.ft. | -7,550 | 2,072 sq.ft. | -11,500 | 1,844 sq.ft. | |
| Basement & Finished | 0 | 0 | | 0 | | 0 | |
| Rooms Below Grade | N/A | N/A | | N/A | | N/A | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | FAU/CAC | FAU/CAC | | FAU/EVAP | +3,000 | FAU/CAC | |
| Energy Efficient Items | NONE NOTED | NONE NOTED | | NONE NOTED | | NONE NOTED | |
| Garage/Carport | GARAGE-2 | 2-GARAGE | | 3-GARAGE | -5,000 | 2-GARAGE | |
| Porch/Patio/Deck | PATIO | PATIO | | PATIO | | PATIO | |
| | POOL | NONE | +15,000 | NONE | +15,000 | POOL | |
| Net Adjustment (Total) | | ☐ + ☒ - $ | 12,550 | ☐ + ☒ - $ | 43,500 | ☐ + ☒ - $ | 10,000 |
| Adjusted Sale Price of Comparables | | Net Adj. % Gross Adj. % $ | 372,450 | Net Adj. % Gross Adj. % $ | 376,500 | Net Adj. % Gross Adj. % $ | 370,000 |

☐ I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☒ did ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)    DATA QUICK/MLS
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)    DATA QUICK/MLS
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 9/20/06 --*-- 4/25/05 | 9/14/06 | 6/7/95 | 1/26/06 --*-- 10/25/05 |
| Price of Prior Sale/Transfer | $570,000 --*-- $400,000 | $565,000 | NONE | $569,000 --*-- $474,000 |
| Data Source(s) | MLS/DATA QUICK | DATA QUICK/MLS | MLS/DATA QUICK | MLS/DATA QUICK |
| Effective Date of Data Source(s) | 9/08 | 9/08 | 9/08 | 9/08 |

Analysis of prior sale or transfer history of the subject property and comparable sales    THE SUBJECT SOLD TO THE PRESENT OWNER, PER PUBLIC RECORDS, FOR $570,000, 2 YEARS AGO. IT HAS DECREASED SUBSTANTIALLY IN VALUE SINCE THAT TIME. IT ALSO SOLD THE YEAR BEFORE THAT ON 4/25/05 FOR $400,000. THE MARKET INCREASED UP UNTIL 2006 AND THEN HAS BEEN DECREASING RAPIDLY FROM 2006 UNTIL THE PRESENT. COMPARABLE #1 SOLD IN 2006 FOR $565,000 AND THEN RECENTLY SOLD FOR $385,000 FOLLOWING THE SAME DECLINE IN VALUE DURING THAT TIME PERIOD. COMPARABLE #3 SOLD IN 2006 FOR $474,000, WENT UP TO $569,000 IN 2006 AND THEN DECLINED TO $380,000 IN 2008 SHOWING THE SAME DECLINE IN VALUE DURING THAT SAME TIME PERIOD.
Summary of Sales Comparison Approach    COMPARABLE #1 IS LOCATED ON A TRAFFIC STREET SIMILAR TO THE SUBJECT PROPERTY. IT IS A SLIGHTLY LARGER HOUSE THAT WAS SUPERIOR IN CONDITION. COMPARABLE #2 IS LOCATED ON THE SAME TRAFFIC STREET AS THE SUBJECT, BUT IS A LARGER HOUSE THAT HAD JUST BEEN REHABBED AND WAS SUPERIOR IN CONDITION. COMPARABLE #3 WAS SIMILAR TO THE SUBJECT IN CONDITION, BUT WAS NOT LOCATED ON A TRAFFIC STREET, LIKE THE SUBJECT AND IS ADJUSTED 5% FOR LOCATION. VALUES HAVE BEEN DECREASING AT APPROXIMATELY 1.5% PER MONTH. COMPARABLES #1 AND #3 ARE VERY RECENT SALES, BUT COMPARABLE #2 SOLD A LITTLE OVER 4 MONTHS AGO AND IS ADJUSTED FOR TIME AT 1.5% PER MONTH. COMPARABLE #2 SOLD THE LAST DAY OF MAY SO THE TIME PERIOD IS 4 MONTHS FROM JUNE UNTIL THE LAST DAY OF SEPTEMBER. THE LOWER VALUE IN THE VALUE RANGE IS USED SINCE THE MARKET IS STILL DECLINING.

Indicated Value by Sales Comparison Approach $    370,000

Indicated Value by: Sales Comparison Approach $ 370,000    Cost Approach (if developed) $ 376,196    Income Approach (if developed) $

THE SALES COMPARISON APPROACH BEST REFLECTS THE INTERACTIONS OF BUYERS AND SELLERS IN THE MARKETPLACE AND IS SUPPORTED BY THE COST APPROACH. THE INCOME APPROACH WAS NOT USED AND DID NOT APPLY. THIS APPRAISAL IS NOT FOR A FEDERALLY RELATED TRANSACTION. THIS AN UPDATE OF A PREVIOUS APPRAISAL.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:    THIS IS A COMPLETE SUMMARY REPORT.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 370,000 , as of 10/13/08 , which is the date of inspection and the effective date of this appraisal.

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

**File #** 08-1010

**ADDITIONAL COMMENTS**

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)

| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | =$ | 250,000 |
|---|---|---|---|
| Source of cost data  MARSHALL AND SWIFT COST SERVICE | DWELLING  1,842 Sq.Ft. @ $  110.00 | =$ | 202,620 |
| Quality rating from cost service  AVG    Effective date of cost data  9/08 | 0 Sq.Ft. @ $ | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | POOL/PATIOPORCH | =$ | 24,000 |
| THE LAND VALUE IS TYPICAL FOR THE AREA. | Garage/Carport  541 Sq.Ft. @ $  30.00 | =$ | 16,230 |
| | Total Estimate of Cost-New | =$ | 242,850 |
| | Less  Physical  Functional  External | | |
| | Depreciation  141,654 | =$( | 141,654) |
| | Depreciated Cost of Improvements | =$ | 101,196 |
| | "As-is" Value of Site Improvements | =$ | 25,000 |
| Estimated Remaining Economic Life (HUD and VA only)  25 Years | INDICATED VALUE BY COST APPROACH | =$ | 376,196 |

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

| Estimated Monthly Market Rent $  N/A  X Gross Rent Multiplier  N/A  = $ | Indicated Value by Income Approach |
|---|---|

Summary of Income Approach (including support for market rent and GRM)

**PROJECT INFORMATION FOR PUDs (if applicable)**

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No  Unit type(s) ☐ Detached ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project  N/A

| Total number of phases | Total number of units  N/A | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale  N/A | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes ☐ No  If Yes, date of conversion.

Does the project contain any multi-dwelling units? ☐ Yes ☐ No  Data Source

Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.  N/A

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

File # 08-1010

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:**  The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:**  The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:**  The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:**  The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:**  The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1.  The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2.  The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3.  The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4.  The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5.  The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6.  The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report    File # 08-1010

**APPRAISER'S CERTIFICATION:**  The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

File # 08-1010

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my ''electronic signature,'' as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:**  The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an ''electronic record'' containing my ''electronic signature,'' as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name   STEVE HOBBS, SRA, SRPA | Name |
| Company Name   SOUTHERN CALIFORNIA APPRAISAL COMPANY | Company Name |
| Company Address   27201 TOURNEY ROAD #201, SANTA | Company Address |
| CLARITA, CA. 91355 | |
| Telephone Number   661-255-0770 | Telephone Number |
| Email Address | Email Address |
| Date of Signature and Report   October 23, 2008 | Date of Signature |
| Effective Date of Appraisal   10/13/08 | State Certification # |
| State Certification # | or State License # |
| or State License # | State |
| or Other (describe)                       State # | Expiration Date of Certification or License |
| State   CA | |
| Expiration Date of Certification or License | **SUBJECT PROPERTY** |
| | ☐ Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did inspect exterior of subject property from street |
| 19413 GREEN MOUNTAIN DRIVE | Date of Inspection |
| SANTA CLARITA, CA 91321 | ☐ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $   370,000 | Date of Inspection |
| LENDER/CLIENT | |
| Name   THIS IS AN APPRAISAL FOR THE OWNER. | **COMPARABLE SALES** |
| Company Name   N/A | |
| Company Address | ☐ Did not inspect exterior of comparable sales from street |
| | ☐ Did inspect exterior of comparable sales from street |
| Email Address | Date of Inspection |

File No. GSC010   Page #9

## Building Sketch (Page - 1)

| | |
|---|---|
| Borrower/Client | BURNS |
| Property Address | 19413 GREEN MOUNTAIN DRIVE |

| City SANTA CLARITA | County LOS ANGELES | State CA | Zip Code 91321 |
|---|---|---|---|
| Lender N/A | | | |




Sketch by Apex IV™

Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Net Size | Net Totals |
| GLA1 | First Floor | 299.0 | 299.0 |
| GLA2 | Second Floor | 1542.8 | 1542.8 |
| GAR | Garage | 540.5 | 540.5 |
| | | | |
| Net LIVABLE Area | | (Rounded) | 1842 |

| LIVING AREA BREAKDOWN | |
|---|---|
| Breakdown | Subtotals |
| First Floor | |
| 13.0 x 23.0 | 299.0 |
| Second Floor | |
| 21.5 x 50.0 | 1075.0 |
| 18.0 x 23.0 | 414.0 |
| 2.5 x 21.5 | 53.8 |
| | |
| 4 Items (Rounded) | 1842 |

Form SKT.BldSkI — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Location Map

| Borrower/Client | BURNS | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 19413 GREEN MOUNTAIN DRIVE | | | | | | |
| City | SANTA CLARITA | County | LOS ANGELES | State | CA | Zip Code | 91321 |
| Lender | N/A | | | | | | |



# MULTI-PURPOSE SUPPLEMENTAL ADDENDUM
# FOR FEDERALLY RELATED TRANSACTIONS

SOUTHERN CALIFORNIA APPRAISAL COMPANY (805) 255-0770

| | |
|---|---|
| Borrower/Client  BURNS | |
| Property Address 19413 GREEN MOUNTAIN DRIVE | |
| City  SANTA CLARITA    County  LOS ANGELES    State  CA    Zip Code  91321 | |
| Lender  N/A | |

This Multi-Purpose Supplemental Addendum for Federally Related Transactions was designed to provide the appraiser with a convenient way to comply with the current appraisal standards and requirements of the Federal Deposit Insurance Corporation (FDIC), the Office of the Comptroller of Currency (OCC), The Office of Thrift Supervision (OTS), the Resolution Trust Corporation (RTC), and the Federal Reserve.

**This Multi-Purpose Supplemental Addendum is for use with any appraisal.  Only those statements which have been checked by the appraiser apply to the property being appraised.**

## ☒  PURPOSE & FUNCTION OF APPRAISAL

The purpose of the appraisal is to estimate the market value of the subject property as defined herein.  The function of the appraisal is to assist the above-named Lender in evaluating the subject property for lending purposes.  This is a Federally related transaction.

## ☒  EXTENT OF APPRAISAL PROCESS

☒ The appraisal is based on the information gathered by the appraiser from public records, other identified sources, inspection of the subject property and neighborhood, and selection of comparable sales within the subject market area.  The original source of the comparables is shown in the Data Source section of the market grid along with the source of confirmation, if available.  The original source is presented first.  The sources and data are considered reliable. When conflicting information was provided, the source deemed most reliable has been used.  Data believed to be unreliable was not included in the report nor used as a basis for the value conclusion.

☒ The Reproduction Cost is based on   MARSHALL AND SWIFT
supplemented by the appraiser's knowledge of the local market.

☒ Physical depreciation is based on the estimated effective age of the subject property.  Functional and/or external depreciation, if present, is specifically addressed in the appraisal report or other addenda.  In estimating the site value, the appraiser has relied on personal knowledge of the local market.  This knowledge is based on prior and/or current analysis of site sales and/or abstraction of site values from sales of improved properties.

☒ The subject property is located in an area of primarily owner-occupied single family residences and the Income Approach is not considered to be meaningful. For this reason, the Income Approach was not used.

☐ The Estimated Market Rent and Gross Rent Multiplier utilized in the Income Approach are based on the appraiser's knowledge of the subject market area. The rental knowledge is based on prior and/or current rental rate surveys of residential properties.  The Gross Rent Multiplier is based on prior and/or current analysis of prices and market rates for residential properties.

☐ For income producing properties, actual rents, vacancies and expenses have been reported and analyzed.  They have been used to project future rents, vacancies and expenses.

## ☒  SUBJECT PROPERTY OFFERING INFORMATION

According to   DATA QUICK                                                                  the subject property:
☐ has not been offered for sale in the past 30 days.
☐ is currently offered for sale for $    535000                          .
☐ was offered for sale within the past 30 days for $                                          .
☐ Offering information was considered in the final reconciliation of value.
☐ Offering information was not considered in the final reconciliation of value.
☐ Offering information was not available.  The reasons for unavailability and the steps taken by the appraiser are explained later in this addendum.

## ☒  SALES HISTORY OF SUBJECT PROPERTY

According to   MLS                                                                        the subject property:
☒ has not transferred in the past twelve months.              ☐ has not transferred in the past thirty-six months.
☐ has transferred in the past twelve months.                  ☐ has transferred in the past thirty-six months.
☐ All prior sales which have occurred in the past twelve months are listed below and reconciled to the appraised value, either in the body of the report or in the addenda.

| Date | Sales Price | Document # | Seller | Buyer |
|---|---|---|---|---|
| | | | | |
| | | | | |

## ☒  FEMA FLOOD HAZARD DATA

☒ Subject property is not located in a FEMA Special Flood Hazard Area.
☐ Subject property is located in a FEMA Special Flood Hazard Area.

| Zone | FEMA Map/Panel # | Map Date | Name of Community |
|---|---|---|---|
| C | 065043-0480B | 12/2/80 | SANTA CLARITA |

☐ The community does not participate in the National Flood Insurance Program.
☐ The community does participate in the National Flood Insurance Program.
☐ It is covered by a regular program.
☐ It is covered by an emergency program.

Form MPA — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

☒ **CURRENT SALES CONTRACT**

☐ The subject property is currently not under contract.

☒ The contract and/or escrow instructions were not available for review. The unavailability of the contract is explained later in the addenda section.

☐ The contract and/or escrow instructions were reviewed. The following summarizes the contract:

| Contract Date | Amendment Date | Contract Price | Seller |
|---|---|---|---|
| | | | BURNS |

☐ The contract indicated that personal property was not included in the sale.

☐ The contract indicated that personal property was included. It consisted of _____

Estimated contributory value is $ _____ .

☒ Personal property was not included in the final value estimate.

☐ Personal property was included in the final value estimate.

☐ The contract indicated no financing concessions or other incentives.

☐ The contract indicated the following concessions or incentives: _____

_____ .

☐ If concessions or incentives exist, the comparables were checked for similar concessions and appropriate adjustments were made, if applicable, so that the final value conclusion is in compliance with the Market Value defined herein.

☒ **MARKET OVERVIEW**    Include an explanation of current market conditions and trends.

1-3 _____ months is considered a reasonable marketing period for the subject property based on   MLS _____

_____ .

☒ **ADDITIONAL CERTIFICATION**

The Appraiser certifies and agrees that:

(1) The analyses, opinions and conclusions were developed, and this report was prepared, in conformity with the Uniform Standards of Professional Appraisal Practice ("USPAP"), except that the Departure Provision of the USPAP does not apply.

(2) Their compensation is not contingent upon the reporting of predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event.

(3) This appraisal assignment was not based on a requested minimum valuation, a specific valuation, or the approval of a loan.

☒ **ADDITIONAL (ENVIRONMENTAL) LIMITING CONDITIONS**

The value estimated is based on the assumption that the property is not negatively affected by the existence of hazardous substances or detrimental environmental conditions unless otherwise stated in this report. The appraiser is not an expert in the identification of hazardous substances or detrimental environmental conditions. The appraiser's routine inspection of and inquiries about the subject property did not develop any information that indicated any apparent significant hazardous substances or detrimental environmental conditions which would affect the property negatively unless otherwise stated in this report. It is possible that tests and inspections made by a qualified hazardous substance and environmental expert would reveal the existence of hazardous substances or detrimental environmental conditions on or around the property that would negatively affect its value.

☒ **ADDITIONAL COMMENTS**

I HAVE THE NECESSARY EXPERIENCE TO APPRAISE THIS TYPE OF PROPERTY.

☒ **APPRAISER'S SIGNATURE & LICENSE/CERTIFICATION**

Appraiser's Signature _____    Effective Date   10/13/08 _____    Date Prepared   3/17/06 _____

Appraiser's Name (print)   STEVE HOBBS, SRA, SRPA    Phone # ( )

State  CA ____    ☐ License    ☒ Certification #   AG003710 _____    Tax ID # _____

☐ **CO-SIGNING APPRAISER'S CERTIFICATION**

☐ The co-signing appraiser has personally inspected the subject property, both inside and out, and has made an exterior inspection of all comparable sales listed in the report. The report was prepared by the appraiser under direct supervision of the co-signing appraiser. The co-signing appraiser accepts responsibility for the contents of the report including the value conclusions and the limiting conditions, and confirms that the certifications apply fully to the co-signing appraiser.

☐ The co-signing appraiser has not personally inspected the interior of the subject property and:

☐ has not inspected the exterior of the subject property and all comparable sales listed in the report.

☐ has inspected the exterior of the subject property and all comparable sales listed in the report.

☐ The report was prepared by the appraiser under direct supervision of the co-signing appraiser. The co-signing appraiser accepts responsibility for the contents of the report, including the value conclusions and the limiting conditions, and confirms that the certifications apply fully to the co-signing appraiser with the exception of the certification regarding physical inspections. The above describes the level of inspection performed by the co-signing appraiser.

☐ The co-signing appraiser's level of inspection, involvement in the appraisal process and certification are covered elsewhere in the addenda section of this appraisal.

☐ **CO-SIGNING APPRAISER'S SIGNATURE & LICENSE/CERTIFICATION**

Co-Signing
Appraiser's Signature _____    Effective Date   3/1/2001 _____    Date Prepared _____

Co-Signing Appraiser's Name (print) _____    Phone # ( )

State _____    ☐ License    ☐ Certification # _____    Tax ID # _____

**DEFINITION OF MARKET VALUE:**  The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus.  Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

> \* Adjustments to the comparables must be made for special or creative financing or sales concessions.  No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions.  Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction.  Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:**  The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1.  The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it.  The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title.  The property is appraised on the basis of it being under responsible ownership.

2.  The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3.  The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area.  Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4.  The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5.  The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6.  The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal.  Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent  conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist.  Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7.  The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct.  The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8.  The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9.  The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10.  The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent.  The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

SOUTHERN CALIFORNIA APPRAISAL COMPANY (805) 255-0770
Form ACR — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

**APPRAISER'S CERTIFICATION:**  The Appraiser certifies and agrees that:

1.  I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation.  If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2.  I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report.  I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3.  I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4.  I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5.  I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6.  I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7.  I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8.  I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them.  I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9.  I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report.  I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:**  If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:**   19418 GREEN MOUNTAIN DRIVE, SANTA CLARITA, CA 91321

| **APPRAISER:** | **SUPERVISORY APPRAISER (only if required):** |
|---|---|
| Signature: | Signature: |
| Name:  STEVE HOBBS, GAA, SRPA | Name: |
| Date Signed:  October 23, 2008 | Date Signed: |
| State Certification #: | State Certification #: |
| or State License #: | or State License #: |
| State:  CA | State: |
| Expiration Date of Certification or License: | Expiration Date of Certification or License: |

☐ Did     ☐ Did Not Inspect Property

Form ACR — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

File Number DESQ010  Page #15

## Subject Photo Page

| Borrower/Client   BURNS | | | |
|---|---|---|---|
| Property Address   19413 GREEN MOUNTAIN DRIVE | | | |
| City   SANTA CLARITA | County   LOS ANGELES | State   CA | Zip Code   91321 |
| Lender   N/A | | | |



### Subject Front

19413 GREEN MOUNTAIN DRIVE

| | |
|---|---|
| Sales Price | APPRAISAL |
| Gross Living Area | 1,842 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3 |
| Location | MIN.TRAFFIC |
| View | NONE |
| Site | 7,840 SQ.FT. |
| Quality | AVERAGE |
| Age | 1968 |

### Subject Rear

### Subject Street

**Comparable Photo Page**

| Borrower/Client | BURNS | | | | |
|---|---|---|---|---|---|
| Property Address | 19413 GREEN MOUNTAIN DRIVE | | | | |
| City   SANTA CLARITA | County   LOS ANGELES | | State   CA | Zip Code   91321 | |
| Lender   N/A | | | | | |



### Comparable 1

26126 FRIENDLY VALLEY
| Prox. to Subject | 0.15 miles |
|---|---|
| Sale Price | 385,000 |
| Gross Living Area | 1,993 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 4 |
| Location | MIN.TRAFFIC |
| View | FAIR |
| Site | 9,750 SF |
| Quality | AVERAGE |
| Age | 1966 |



### Comparable 2

19423 GREEN MOUNTAIN DR.
| Prox. to Subject | 0.01 miles |
|---|---|
| Sale Price | 420,000 |
| Gross Living Area | 2,072 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3 |
| Location | MIN.TRAFFIC |
| View | NONE |
| Site | 7,840 SF |
| Quality | AVERAGE |
| Age | 1967 |



### Comparable 3

26340 TORREYPINES DRIVE
| Prox. to Subject | 0.58 miles |
|---|---|
| Sale Price | 380,000 |
| Gross Living Area | 1,844 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3 |
| Location | AVERAGE |
| View | NONE |
| Site | 7,897 SF |
| Quality | AVERAGE |
| Age | 1968 |

**EXHIBIT "4"**

**B6I (Official Form 6I) (12/07)**

**IN RE** Smith, Russell L & Smith, Joy C                      Case No. **SV 08-17343 MT**

                    Debtor(s)                                               (If known)

## SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. Do not state the name of any minor child. The average monthly income calculated on this form may differ from the current monthly income calculated on From 22A, 22B, or 22C.

| Debtor's Marital Status | DEPENDENTS OF DEBTOR AND SPOUSE | | |
|---|---|---|---|
| **Married** | RELATIONSHIP(S):<br>**Child** | | AGE(S):<br>**12** |

| EMPLOYMENT: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation<br>Name of Employer<br>How long employed<br>Address of Employer | **Precision Dynamics Corporation**<br>**1 years**<br>**13880 Del Sur Street**<br>**San Fernando, CA  91340-3490** | |

**INCOME:** (Estimate of average or projected monthly income at time case filed)

| | DEBTOR | SPOUSE |
|---|---|---|
| 1. Current monthly gross wages, salary, and commissions (prorate if not paid monthly) | $ 7,048.81 | $ |
| 2. Estimated monthly overtime | $ | $ |
| **3. SUBTOTAL** | $ 7,048.81 | $ 0.00 |
| 4. LESS PAYROLL DEDUCTIONS | | |
| a. Payroll taxes and Social Security | $ 2,030.20 | $ |
| b. Insurance | $ | $ |
| c. Union dues | $ | $ |
| d. Other (specify)    **See Schedule Attached** | $ 2,025.97 | $ |
| | $ | $ |
| **5. SUBTOTAL OF PAYROLL DEDUCTIONS** | $ 4,056.17 | $ 0.00 |
| **6. TOTAL NET MONTHLY TAKE HOME PAY** | $ 2,992.64 | $ 0.00 |
| 7. Regular income from operation of business or profession or farm (attach detailed statement) | $ | $ |
| 8. Income from real property | $ | $ |
| 9. Interest and dividends | $ | $ |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above | $ | $ |
| 11. Social Security or other government assistance (Specify) | $ | $ |
| | $ | $ |
| 12. Pension or retirement income | $ | $ |
| 13. Other monthly income (Specify) **Child Support** | $ | $ 750.00 |
| **Monthly Gift From Parents** | $ | $ 1,000.00 |
| | $ | $ |
| **14. SUBTOTAL OF LINES 7 THROUGH 13** | $ | $ 1,750.00 |
| **15. AVERAGE MONTHLY INCOME** (Add amounts shown on lines 6 and 14) | $ 2,992.64 | $ 1,750.00 |

**16. COMBINED AVERAGE MONTHLY INCOME**: (Combine column totals from line 15; if there is only one debtor repeat total reported on line 15)

                                         $       **4,742.64**

(Report also on Summary of Schedules and, if applicable, on Statistical Summary of Certain Liabilities and Related Data)

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:
**None**

© 1993-2008 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

IN RE **Smith, Russell L & Smith, Joy C**                                    Case No. **SV 08-17343 MT**
Debtor(s)

## SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)
### Continuation Sheet - Page 1 of 1

| | DEBTOR | SPOUSE |
|---|---|---|
| Other Payroll Deductions: | | |
| **Select PPO** | 315.51 | |
| **Dental PPO** | 135.16 | |
| **Flex Healthcare** | 151.67 | |
| **Vision PPO** | 15.30 | |
| **Miscellaneous** | 1,408.33 | |

© 1993-2008 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

**EXHIBIT "5"**

B6J (Official Form 6J) (12/07)

**IN RE** Smith, Russell L & Smith, Joy C                                      Case No. **SV 08-17343 MT**
_____                    _____
Debtor(s)                                                                                           (If known)

## SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average or projected monthly expenses of the debtor and the debtor's family at time case filed. Prorate any payments made biweekly, quarterly, semi-annually, or annually to show monthly rate. The average monthly expenses calculated on this form may differ from the deductions from income allowed on Form22A or 22C.

☐ Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete a separate schedule of expenditures labeled "Spouse."

| | |
|---|---:|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | $ 2,243.19 |
|    a. Are real estate taxes included?   Yes _____  No ✔ | |
|    b. Is property insurance included?   Yes _____  No ✔ | |
| 2. Utilities: | |
|    a. Electricity and heating fuel | $ 250.00 |
|    b. Water and sewer | $ 65.00 |
|    c. Telephone | $ 150.00 |
|    d. Other  **TV Cable And Internet** | $ 175.00 |
| | $ |
| 3. Home maintenance (repairs and upkeep) | $ 50.00 |
| 4. Food | $ 600.00 |
| 5. Clothing | $ 75.00 |
| 6. Laundry and dry cleaning | $ 25.00 |
| 7. Medical and dental expenses | $ 50.00 |
| 8. Transportation (not including car payments) | $ 225.00 |
| 9. Recreation, clubs and entertainment, newspapers, magazines, etc. | $ 50.00 |
| 10. Charitable contributions | $ |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | |
|    a. Homeowner's or renter's | $ 65.00 |
|    b. Life | $ 86.00 |
|    c. Health | $ |
|    d. Auto | $ 175.00 |
|    e. Other | $ |
| | $ |
| 12. Taxes (not deducted from wages or included in home mortgage payments) | |
|    (Specify) | $ |
| | $ |
| 13. Installment payments: (in chapter 11, 12 and 13 cases, do not list payments to be included in the plan) | |
|    a. Auto | $ 377.78 |
|    b. Other | $ |
| | $ |
| 14. Alimony, maintenance, and support paid to others | $ |
| 15. Payments for support of additional dependents not living at your home | $ |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | $ |
| 17. Other | $ |
| | $ |
| | $ |

**18. AVERAGE MONTHLY EXPENSES** (Total lines 1-17. Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.  | $ 4,661.97 |

19. Describe any increase or decrease in expenditures anticipated to occur within the year following the filing of this document:
**None**

## 20. STATEMENT OF MONTHLY NET INCOME

| | |
|---|---:|
|    a. Average monthly income from Line 15 of Schedule I | $ 4,742.64 |
|    b. Average monthly expenses from Line 18 above | $ 4,661.97 |
|    c. Monthly net income (a. minus b.) | $ 80.67 |

© 1993-2008 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only